Good morning, your honors. My name is James P. Ragan, attorney in pro se. I would like to reserve approximately two minutes at the end for any rebuttal. You may do so, counsel. Just watch the clock. Thank you. The district court ruled that the government made out a prima facie case and met its burden for summary judgment based on the promissory note, the certificate of a deadness, and the declaration of Peter Inhout that Ragan had defaulted on a loan. Judge Luz in the district court order goes on to state that the burden shifted to Ragan to prove the amount due was not owing. However, it is not Ragan's burden to prove the principal amount of 23,109 is not owed, as Ragan only has the burden to produce evidence to show that a genuine issue of fact exists as to any material issue. The district court's ruling clearly overlooked contradictions that appeared within the government's evidence that should have precluded the entry of summary judgment. In addition, the district court overruled Ragan's evidentiary objections that the 41387 application promissory note was inadmissible hearsay and that the certificate of indebtedness lacked trustworthiness based on inconsistencies from the government's loan records and in the absence of a declaration from the custodian of records or L. Hong to authenticate the certificate. Counsel, I'm looking at page 187 of the record, which is the promissory note. What is your contention about what is in column 14? The copy that I have is probably a Xerox of a Xerox of a Xerox, so it's not very clear. But for the top three lines in column 14, what do you contend are those numbers? Your Honor, the – what is indiscernible of the promissory note is the amount that is owed under the three entries. And I think that's what we're speaking to, is that we think that. Well, why don't you answer the question that I'm speaking to first, and that is what is your contention as to what these numbers are? Because I can't read them. Well, that's the issue, Your Honor. I cannot read them either. Well, one of them looks like about $15,000 and change, and one of them looks like $2,000 and change, and one of them looks like about $5,000 and change. So that comes to about 22-5, which has been mentioned. 22-5 has been identified in some of the documents. Well, what the number that's been mentioned that's been sued on is 23-109. Okay. The differential then was probably some fees or interest? We don't know that, Your Honor. There's been no evidence submitted in reference to that. Mr. Reagan, I have a question for you. Sure. Why isn't this a case that ought to go to mediation and be settled? You took these loans. You took advantage of the government's largesse in guaranteeing the loans, and you owe an amount, and you claim the government hasn't proved it exactly, but presumably you have some records of your own that would indicate how much you think you owe. Why shouldn't we send this case to mediation? I have no objection to mediation, Your Honor. I attempted to resolve this informally. Well, I'll ask the government the same question in view of the difficulty of actually reading the numbers here, but it seems to me that other than the exact amount that is owed, there are no other factual issues in this case. Well, Your Honor, I submitted on that all along, and my position was this, is one that there's an inference that is clearly created by the delay of the government for 23 years in bringing this action. Well, also, you didn't pay for the loans, so, I mean, there's plenty of blame to go around here. I'm not so sure, Your Honor. I'm not so sure, because when this originally came up in my credit report 20-some years ago, I contacted a dear attorney friend of mine who said he handled it and told me that he'd taken care of it. And what happened thereafter is that all of a sudden the note and the ding on my credit report is absent. It's gone. So I assumed that this attorney friend of mine took care of this and satisfied this debt, allowed me to work it off for him, which I did do. And time goes by, and 23 years later, the suit is brought and the same demand is made. Unfortunately, the attorney that handled this matter for me has had a severe stroke probably five years ago and is incapacitated, and I cannot have any significant communications with him regarding the records. I have maintained, yes, there were some loans taken, but to the extent that the government says, I don't believe it's correct, because the government's own documents contradict one another that do not show the sum of 23109. But you have no documents. I mean, what you're telling us it sounds like is you also have no documents at this point. Well, none that I can locate presently and that I haven't been able to locate, and I don't believe that I will be able to locate. But the point being is that the government is suing me for 23109. And if you look at the loan details that was submitted to the declaration of Peter Inhout and all the supporting documents that lie under that, there's a different number on each and every one. But would you concede that if the government had sued you for 2205 that it would be a different case? No, I would not concede that, Your Honor. Why? Because the loan details that Catherine Van Houten points out show $17,500 to be due in owing. And she indicates that the difference from the $17,500 might have been interest, might have been penalties, might have been costs. But that's speculation and she doesn't know. So, again, we have another number of $17,500 versus a $22,000. Well, let me rephrase my question. Would you concede that you owe the $17,500? I'm not so sure, Your Honor, if I would concede that at this point, because what I would really like to have and which could have prevented this whole case from going forward is the declaration from Linda Hom or L. Hom from the Department of Education on the Certificate of Indebtedness. Because the problem with that document, she says 23-109, references a different date for a promise to be made, references a different holder, references a sum that is not supported by any of the documentation. And what needs to be done is how did she calculate that amount? Because the documents that I've seen do not show that. Are you challenging the additional interest as well? I gather the total amount, if you add everything the government contends, is what, $49,000 or something? I paid the government $67,000, I believe. Well, that's not the question in front of us here. I'm sorry, I didn't understand your question. Is the amount in contention on the facts of this case that's in front of us, about $49,000, of which roughly 23 is with respect to the principal and the remainder accrued interest over the years? Well, I think we can resolve the accrued interest over the years once we get to the principal. But the number that came up after the judge, Lew, awarded summary judgment was not $49,000. It came out to $67,000. Counsel, you're down about two and a half minutes. Do you wish to reserve? I'll reserve. You may do so. We'll hear from the government. Good morning. May it please the Court. My name is Catherine Van Houten. I am private counsel for the United States of America for the collection of student loans. Just out of curiosity, this is the first time I've seen a private counsel representing the United States of America. How does that work? Your Honor, it's a contract basis where the Department of Justice is basically our boss, and they assign a certain number of cases, and then we act to collect on those cases. Very well. Thank you. Mr. Reagan concedes that he took these student loans. Could you speak a little louder? I apologize. Mr. Reagan concedes that he went to school. He concedes that he went to law school, that he graduated, and he became an attorney. He concedes he took student loans to finance his education. He concedes that he had not paid off his student loans by the time of the summary judgment motion in this matter. In fact, when we first contacted Mr. Reagan about the student loans, he made a payment of $500 to try to work out this student loan. In response to your earlier questions to him, why did this case not go to mediation, we did try very hard. Well, counsel, today in open court, Mr. Reagan says that he is willing to go to mediation. Is the government still willing to go to mediation? No, Your Honor, because we had already given Mr. Reagan several accommodations and many opportunities to settle this matter. Well, it appears to me that, and I'm reluctant to say this, honestly, but it appears to me that there are questions of fact pertaining only to the amount of the loan. All the other things that are raised, and I'm speaking only for myself, obviously, there appear to be no other questions of fact other than the amount. But there are some discrepancies, including the date and the exact amount. And so why isn't it inappropriate for summary judgment and has to go to the next step? The summary judgment is only where there's an issue of material fact. Well, the amount of the loan in a debt is the most material fact there is, isn't it? I understand, Your Honor, but the evidence that we have to show the amount of the loan is completely reasonable given the facts that we have. Well, it may be reasonable, but it's not undisputed because it's self-contradictory in some respects. And just the government's explanation, in my mind, is probably by far the most reasonable one, but it isn't the only possible way to look at these numbers, which are not 100 percent consistent. Your Honor, if I may point out on Clerk's Transcript Exhibit No. 187, the promissory note we were just talking about, if you go to No. 18, underneath Mr. Reagan's signature is permission to verify the loan balances. Your Honor, I would submit that the National Student Loan Student Database does have the correct balance, which is at Clerk's Transcript Page No. 195. This is the computer program kept for the National Student Loan Database. And computers can't make mistakes, and people inputting information can't make mistakes. Websites sometimes make mistakes. It's verified at the time, and this is the records that we would have to go by to determine the amount that was due. Counsel, I ask the same question I asked your opposing counsel. Column 14, the first three lines, what are those numbers? Can you read them? Your Honor, I cannot. However, these are numbers that are input by the borrower who is seeking to consolidate his loan, and I would contend that the exact numbers are not relevant because the purpose of this application is to consolidate the student loans and the application itself expects the government to verify the balance and to go to their records at the National Student Loan. Okay, but isn't this a promissory note? It is, Your Honor. And your government is suing on the note to enforce the note. Yes. Well, the government's got the burden. If you can't find the note, you've got a real problem. We have the note, Your Honor. And if the note's illegible, doesn't the government have a problem? But it is the material terms are illegible, Your Honor. All the material terms except the amount. Well, we're going to verify the balance. It doesn't say that the amount will be on the note. And what do you say we can look at to verify the real balance owed on this note? Is that 195? 195 is the National Student Loan database. Pardon me. Yes, I apologize. When I ask for the time, don't tell me how to build a clock. I apologize. Where is the document that you contend tells us what the proper balance is? The Certificate of Indebtedness, Your Honor, at 192. 192. This is the sworn statement of the loan analyst for the Department of Education who reviewed all of the records and determined the amount. I don't see Mr. Reagan's signature on that. No, that is the verification by the loan analyst who reviewed the underlying account record. In other words, an employee of the government has made his or her own interpretation. But, again, it's not the note, and there's no signature. There's no consent. The consent, Your Honor, is back at 187 at the permission to verify the loan balance at number 18, which Mr. Reagan signed. Does that permission say whatever number you put on, whoever does it, don't show it to me, that number's okay? Your Honor, it does not go into that detail. I don't think it does that, no? No, it does not go into that detail. Now, what we have here at 192 is a report prepared by a government employee, a creditor, for purposes of litigation. Not in the regular course of business, but for purposes of litigation, isn't it? I would contend that it's not necessarily for the purpose of litigation, and that you could have any document might be used for litigation, but where it has the inherent trustworthiness of being a government employee, this is their job to review the records and put down the evidence. Well, that makes it admissible, but it doesn't necessarily make it accurate, which is the question, because it can be admissible, but if it's mistaken in some way, then it's mistaken, potentially. The accuracy lies in the fact that it's relying on the records kept in the ordinary course of business, the National Student Loan Database, Your Honor. And it's completely logical that at the time of the consolidation of the loan, there would have been capitalized interest from the assigning parties. And that's the material found at 194 to 196 is the National Student Loan Database. Yes, Your Honor. Underlying material. The error that Mr. Reagan points out on the certificate of indebtedness is one of the date. It's simply a mistake of a four for a seven, or a seven for a four, from the note that it's a minor clerical error, and it does not go to the inherent trustworthiness of the document. Certificates of indebtedness are inherently trustworthy. They're created by the government employee in the course of their ordinary duties, admissible as a public record. We believe that Judge Liu properly admitted the promissory note and the certificate of indebtedness. Summary judgment for the government was proper, and we ask this Court to affirm. If there are no further questions, I will submit this case. Thank you, Counsel. Mr. Reagan, you have some reserve time. At 192, the certificate of indebtedness, the problem with that document is it says that on or about July 23, 1987, the borrower executed promissory notes to secure loans of 23,109. One, the promissory note that we refer to is 4-13-1987, not July 23, 1987. Right. But the date doesn't make the amount wrong. What about pages 194 to 196, the loan history information from the National Student Loan Database, which also lists the same amount of 23,109 as the outstanding principal balance? What I just would like to finish up before I address that issue, also it indicates that the holder of the note on the certificate of indebtedness is Great Lakes Higher Education Corporation. The note references Sally May. Also, the note references a 7 percent interest rate, while the certificate of indebtedness references a 9 percent interest rate. So my whole position on this is that they're referring to somebody else's note and not mine. Okay. Now turn to my question, please. That's clearly you. Okay, this is a one-page document. Well, it appears to be three pages that are related, 194 to 196, I guess, or 197. But at all events, on page 194, it lists the same outstanding principal balance on this record as the one that you've been speaking about. Well, and sure, and you turn to 195, the following page, that purports to make up these, all the numbers. And we have a 23,109. We have a $5,000 fee. We have a 0, a 0, a 0, a 0. What are you looking at, counsel? I'm looking at page, date stamp 195. 195. Whereabouts? What part of it? 196. Item 6, bottom? Yes. And it indicates different amounts on each and every entry. And the problem with the 23. Well, except, counsel, 194 lists the outstanding principal balance consolidated at 23,109. 195 is exactly the same. It says consolidated 23,109. And the other things are not part of the consolidated. They're other things. They may be subparts of it. But the documents, these documents at least, are completely consistent that the outstanding principal balance is 23,109. So that is page 192 and 194 and 195 all say the same thing. So they would all have to be wrong for you to be right. Well, and I would concur with that. And it's not necessarily that they're wrong. It's that they're contradicted by the government's own documents. One being the note itself, which you can't glean the amount to be due an owing. And in addition to that. What is your response to the argument, though, that the promissory note itself contemplated that the loan balance would be verified and that it might not be by the time it's verified identical to the amounts on the application itself? Now, it doesn't say that at all. That it may not be identical to the amount that's on the loan application. I don't read that language at all. What needs to be done. You authorize the government to verify the amounts, correct? Absolutely. Okay. And they've done that. And pages 192, 194, and 195 have verified that the outstanding loan balance is 23,109. All three of those pages say that. Well, we have a contradiction in the further government records at Bates 58, 67, 75, and 77 that show evidence for a principal amount of $5,000. The Department of Education NSLGS records show one disbursement for $5,000, and all data entries for the remaining five loans show zero disbursement. So the other issue becomes on the note, what loans were actually consolidated into the Sally May loan? Well, your application tells what loans. It's page 187. I don't know which loans. I don't know which loans, because there's three loans, and the government's documents references five loans or six loans, depending on what documents you read. Counsel, our questions have taken you over time, but you may very well prevail with respect to whether there's an issue of fact here, but you're going to go right back to trial court, and it will be a question of identifying what is the actual amount that you owe. Isn't that correct? I agree with that, Your Honor, and that's been the whole point all along. Let's sit down and let's pull out the numbers. Let's talk to the people who generated these numbers. Now, you heard what the government said in terms of their interpretation of the history here. They tried to negotiate with you, and somehow or other that's been exhausted. Well, their negotiation was this is the number, take it or leave it. Has the Ninth Circuit mediation team been involved in this case at all? No. For the record, I would just like to say that I agree with Judge Graber that this could be a possible case for mediation. We won't decide that in open court, but we may take that under advisement. I would just like to make one more comment on the amount owed. Counsel, I think we've given you plenty of time to make your comments. You're way over time. Thank you very much. The case just argued will be submitted for decision, and we will hear argument next.
judges: O'scannlain, Graber, Bea